# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2017, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James P. Fenton
David E. Bailey
Eilbacher Fletcher, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES

Jeremy J. Grogg
Michael A. Barranda
Burt, Blee, Dixon, Sutton &
Bloom, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gerald F. Wagner,

*Appellant,*

v.

Kevin E. Wagner, et al.,

*Appellees.*

October 31, 2017

Court of Appeals Case No.
02A03-1610-PL-2473

Appeal from the Allen Superior
Court

The Honorable Craig J. Bobay,
Judge

Trial Court Cause No.
02D02-1405-PL-156

**Bailey, Judge.**

# Case Summary

Kevin E. Wagner ("Kevin") and WDC Management, Inc. ("WDC") initiated a lawsuit against Gerald F. Wagner ("Gerald") concerning a contract, which led to a bench trial. The trial court entered judgment against Gerald on a portion of the claims, modified the parties' obligations under the contract, and awarded attorney fees to Kevin and WDC. Gerald now appeals; Kevin and WDC cross-appeal.

We affirm in part, vacate in part, and remand.

# Issues

Gerald presents several issues, which we consolidate and restate as:

I.   Whether the trial court erred in modifying the contract in favor of Kevin and WDC as a remedy for breach; and

II.  Whether the trial court erred in awarding attorney fees to Kevin and WDC pursuant to a fee-shifting provision.

On cross-appeal, Kevin and WDC challenge the fee award, arguing that the trial court erred by awarding them only one-third of their requested fees. Kevin and WDC also ask that we remand for a hearing regarding their entitlement to appellate attorney fees under the fee-shifting provision.

# Facts and Procedural History

[5] Gerald and his son Kevin are general partners in fourteen partnerships that own apartment buildings in rural areas; WDC manages the apartments. The housing is part of a federal government program regulated by the United States Department of Agriculture Rural Development ("Rural Development").

[6] A few years before the instant matter, the parties were engaged in litigation concerning their business relationship. During the pendency of that litigation, Gerald sent a series of letters to Rural Development alleging that WDC had misappropriated funds—one such letter was sent to Barry Ramsey ("Ramsey"). Subsequently, the trial court issued a preliminary injunction that enjoined Gerald from, among other things, publishing statements that would damage the reputations of Kevin and WDC. The parties eventually entered a settlement agreement (the "Agreement"), the terms of which are central to the instant action. One term provides that Gerald, who is a Certified Public Accountant, "is to prepare all partnership tax returns for the partnerships in which he is a general partner" and submit invoices to WDC in accordance with Rural Development guidelines. *Id*. The Agreement also provides that "[a]ny and all protective orders and/or injunctive relief entered by the Court in . . . [certain causes] filed and pending . . . shall remain in place until the death of Gerald." Appellee's App. Vol. II at 63. The trial court approved the Agreement and, in its order of dismissal, included verbatim the contract language relating to the permanency of injunctive relief.

[7] In 2014, Kevin and WDC filed the instant action, initially alleging that Gerald breached the Agreement by failing to prepare the partnership tax returns; Gerald maintained that he needed general ledgers to prepare the returns. Kevin and WDC later learned that Gerald had again written to Ramsey, seeking a meeting to "settle all matters" between Gerald, Kevin, and WDC. Pl.'s Exhibit 3. Gerald also told Ramsey that a law firm had advised him that "this is a criminal case and should be taken to Washington." *Id.* Kevin and WDC amended their complaint, alleging that Gerald's actions were not only contemptuous but also constituted a breach of the Agreement. Moreover, Kevin and WDC added claims of defamation and tortious interference with a business relationship. Gerald filed a counterclaim, alleging that Kevin and WDC had breached the Agreement by failing to fully pay him for tax services.

[8] During the pendency of the instant litigation, the trial court entered oral and written orders enjoining Gerald from taking actions to interfere with Kevin and WDC's existing business relationships and from communicating with non-parties regarding Kevin and WDC. Subsequently, Gerald sent a letter to the Internal Revenue Service, Criminal Division, in which he alleged that WDC had violated Rural Development rules and had stolen funds. Kevin and WDC filed a contempt petition and the trial court determined that Gerald was in

contempt. The trial court ordered Gerald to pay $5,000, which reflected a portion of the attorney fees Kevin and WDC incurred due to their petition.[1]

A bench trial was held in April 2016, during which Gerald made a Trial Rule 41(B) motion to dismiss the claims against him. The trial court partially granted the motion by dismissing the defamation and tortious interference claims, which left only the parties' respective claims of breach.

Following the bench trial, the trial court entered a written order. Therein, the trial court concluded that Gerald's claim lacked merit because Gerald had been paid the amounts due to him under the Rural Development guidelines. As to Kevin's and WDC's claims of breach, the trial court stated that "Gerald breached the Settlement Agreement by contacting other parties regarding WDC." Appellant's App. Vol. II at 34. The trial court did not state that Gerald breached the Agreement by failing to prepare the partnership tax returns (which, by that point, Gerald had filed without penalty). Nonetheless, the trial court postponed entry of judgment in anticipation of a hearing on attorney fees and, in its subsequent final order, stated that Gerald's breach involved his refusal to prepare the tax returns based upon the materials provided to him.

The hearing on attorney fees included interpretation of the fee-shifting provision contained in the Agreement, which provides that "[i]n the event any proceeding

---

[1] The trial court later characterized the letter writing as "ongoing and unfounded for many years." Appellee's App. Vol. II at 52.

is brought to enforce th[e] Agreement, the prevailing party in that proceeding, as that term is defined by the United States Court of Appeals for the Seventh Circuit, shall be entitled to recover its costs, including attorney[] fees, incurred as a result of the proceeding." Appellee's App. Vol. II at 64. Following the hearing, the trial court entered a final written order determining that Kevin and WDC were prevailing parties and entitled to reasonable attorney fees. The trial court awarded Kevin and WDC $26,794.51, which reflects one-third of their requested fees. In so ordering, the trial court observed that Kevin and WDC had engaged in lines of unsuccessful ancillary litigation and "were responsible for the generation of much of their own fees." *Id.* at 59.

[12] This appeal ensued.

# Discussion and Decision

## Standard of Review

[13] Here, the trial court entered sua sponte findings and conclusions, in which case the "findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A general judgment will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* As to issues covered by the findings, we will not set aside the trial court's "findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A

judgment is clearly erroneous only if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.* Moreover, "[a] judgment is clearly erroneous if it relies on an incorrect legal standard." *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). In conducting our review, we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A). Although we do not reweigh the evidence and we defer to the trial court's findings of fact, we give no deference to conclusions of law. *Menard*, 726 N.E.2d at 1210. A matter of contract interpretation presents a question of law, which we review de novo. *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016).

## Equitable Remedy for Breach

[14] As an initial matter, Gerald argues that the trial court erred in awarding any remedy at all; Gerald contends that Kevin and WDC failed to prove that they were damaged by a breach of the Agreement and that, absent proof of damages, Kevin and WDC are not entitled to relief. Yet, the trial court determined that Gerald breached the Agreement by refusing to prepare the tax returns[2]—and it is "well settled that, where there has been a breach of contract by one of the parties, the other is at least entitled to nominal damages," *Hall v. Delphi-Deer Creek Twp. Sch. Corp.*, 98 Ind. App. 409, 189 N.E. 527, 530 (1934), though the

---

[2] Gerald argues that the trial court did not identify a breach on this basis because the trial court did not so state in its first written order following the trial. However, the trial court postponed entry of judgment and ultimately included this basis in its final order from which Gerald now appeals.

failure to assess nominal damages is not grounds for reversal. *Patton v. Hamilton*, 12 Ind. 256, 257 (1859). Thus, a successful claim of breach supported the trial court's decision to provide a remedy.[3]

[15] Nonetheless, not all remedies are proper. Here, because Gerald breached the Agreement by refusing to file the partnership tax returns, the trial court determined that Kevin and WDC were entitled to work with a different accountant for future tax returns—thus, the trial court modified the parties' bargained-for obligations under the Agreement. Put another way, the trial court rescinded the discrete part of the contract pertaining to accounting services. Yet, contract modification is an extreme equitable remedy that is not appropriate under these circumstances. *See Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 772 (Ind. Ct. App. 2003) ("[C]ourts may reform written contracts only if: (1) there has been a mutual mistake; or (2) one party makes a mistake while the other party commits fraud or inequitable conduct."); *see also New Life Cmty. Church of God v. Adomatis*, 672 N.E.2d 433, 438 (Ind. Ct. App. 1996) ("Rescission of a contract is not automatically available. Rather, there must be some basis to support the rescission such as fraud, illegality, mutual mistake, or

---

[3] Gerald also argues that the trial court erred in determining that he breached the Agreement by his letter writing, contending that the obligation to refrain from such communications arose from the injunctive power of the court but was not an independent obligation provided for by the contract. However, we need not consider this contention because the trial court addressed the letter writing in a contempt proceeding during the pendency of the case that resulted in a contempt sanction, and there were no additional damages assigned to the letter writing. Moreover, the attorney fees associated with the contempt proceeding were excluded during the calculation of the fee award, which itself was greatly reduced.

a contract provision providing for rescission.").[4] Thus, we conclude that the trial court erred in fashioning its equitable remedy, and we accordingly vacate that portion of the order permitting the procurement of a different accountant.

# Attorney Fees

[16] Under Gerald's proffered resolution of this matter, the fee award should be eliminated because Kevin and WDC succeeded only in defending Gerald's counterclaim.[5] But that is not the case. Rather, Kevin and WDC also succeeded in proving that Gerald breached the Agreement. Thus, we agree with the trial court that Kevin and WDC were prevailing parties under the Seventh Circuit approach, which is the approach provided for in the Agreement. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) (defining "prevailing party" as the party who prevails as to the substantial part of the litigation). We next turn to the argument presented on cross-appeal, which is that the trial court erred in awarding Kevin and WDC only one-third of their requested attorney fees.

[17] "We will enforce a contract allowing for recovery of attorney fees, but '[t]he amount recoverable for an award of attorney fees is left to the sound discretion of the trial court.'" *Fischer v. Heymann*, 12 N.E.3d 867, 874 (Ind. 2014) (quoting

---

[4] Moreover, we disagree with Kevin's and WDC's contention that modifying the Agreement was justified as a use of the trial court's "inherent power to punish" Gerald. Appellee's Br. at 25.

[5] Gerald presents no challenge to the ruling on his counterclaim.

*Dempsey v. Carter*, 797 N.E.2d 268, 275 (Ind. Ct. App. 2003), *trans. denied*). The trial court generally reviews the requested amount for reasonableness. *See id.*; *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1002 (Ind. Ct. App. 2015). Several factors bear on the reasonableness of attorney fees, among them, "the amount involved and the results obtained." Ind. Professional Conduct Rule 1.5; *see Fischer*, 12 N.E.3d at 874 (noting that courts may consider such factors as the hourly rate, the result achieved, and the difficulty of the issues).

[18] Here, the trial court set forth thoughtful remarks regarding its decision to award Kevin and WDC only one-third of their requested fees:

> [T]he court notes the many other theories of recovery and defensive strategies that Kevin and WDC presented, all of which were not terribly successful, but which nonetheless required additional expenditure of time and effort, resulting in the accumulation of substantial additional attorney[] fees. Much of that ancillary litigation was simply not necessary to resolve the principal dispute, and as such, Kevin and WDC were responsible for the generation of much of their own fees.

Appellee's App. at 58-59. Although Kevin and WDC argue that the case involved "entangled claims with the same set of operative facts," Appellee's Br. at 29, and that it would have been "borderline malpractice" not to pursue certain claims, *id.* at 27, we are not persuaded that the trial court abused its discretion in awarding $26,794.51 in attorney fees. We accordingly affirm the fee award selected by the trial court. Moreover, we acknowledge that "[w]hen a contract provision provides that attorney fees are recoverable, appellate attorney fees may also be awarded," *Humphries v. Ables*, 789 N.E.2d 1025, 1036

(Ind. Ct. App. 2003), and so we remand for a determination of the propriety of appellate attorney fees in light of our decision in this matter.

# Conclusion

[19] The trial court did not err in finding that Gerald had breached the contract, but it was error in these circumstances for the court to fashion an equitable remedy that modified the parties' obligations under the Agreement. The trial court did not abuse its discretion in reducing the attorney fee award, and we remand for a determination regarding Kevin's and WDC's entitlement to appellate attorney fees pursuant to the Agreement.

[20] Affirmed in part, vacated in part, and remanded.

Brown, J., and Pyle, J., concur.